UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

WELD-TECH Aps,

        Plaintiff/Counter-
        Defendant

  v.

AQUASOL CORPORATION,

        Defendant/Counter-
        Plaintiff

**DECISION AND ORDER**
13-CV-1048S

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

1.    Weld-Tech Aps and Aqausol Corporation are competitors in the business of the manufacture and sale of welding equipment. Weld-Tech, based in Denmark, and Aquasol, a Delaware corporation with its principal place of business in New York, both make a product called "EZ-Purge," or "EZ Purge" (with no hyphen), a device that enables a pipe or fitting to be sealed during welding work.  Although the products essentially share the same name and are used for the same purpose, they differ in construction. Weld Tech's, for example, is designed for multiple uses, while Aquasol's is used only once and discarded.

2.    Weld Tech brings this action against Aquasol alleging that Aquasol is liable under the Lanham Act and New York Business Law, as well as the common-law doctrines of infringement and unfair competition. Weld-Tech contends that Aquasol is unlawfully using the mark "EZ-Purge" – a mark Weld-Tech acquired simply by using it, through common-law trademark principles. Aquasol disagrees. It is the registered owner of the mark, and Aquasol claims that it, not Weld-Tech, is the so-called "senior user," with the right to exclude others from using the mark. It therefore defends this action and also

brings counterclaims against Weld-Tech. Both parties have moved for summary judgment.[1]

As explained further below, because Weld-Tech did not "use" the mark, as that term is defined by settled trademark principles, before Aquasol's registration of the mark, Aquasol's motion for summary judgment is granted and Weld-Tech's is denied.

3. Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

4. Although Weld-Tech, in addition to moving for summary judgment, seeks further discovery, this Court finds that the established, undisputed facts provide a sufficient basis to resolve the summary-judgment motions. Those facts are as follows.

---

[1] Aquasol also moves for dismissal of portions of Weld-Tech's claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court finds it unnecessary to address those portions of the motion.

By separate motion, Aquasol also seeks to strike portions of Weld-Tech's statement of undisputed material facts. Although that document does contain improper argument, this Court will exercise its discretion to (1) accept only those statements that comply with Local Rule 56(a), and (2) deny the motion to strike. See, e.g., Brown v. Board of Trustees of Building Service 32B–J Pension Fund, 392 F. Supp. 2d 434, 446 (E.D.N.Y. 2005) ("[C]ourts have broad discretion in applying their local rules.").

5.      Weld-Tech began marketing the EZ-Purge device in the United States sometime in late 2003 or early 2004.[2] (Pl.'s Stmnt. of Facts, ¶ 8.) It made its first sale of the product in the United States in December 2004. (Id.) It filed a patent application for this device in March 2004. (Id., ¶ 12.)

6.      One month later, on April 30, 2004, Aquasol filed a trademark application with the United States Patent and Trademark Office for the name "EZ Purge" with the "intent to use" that name in its business. (Douglas Aff; Ex. 10.)  This type of application – one premised on a *bona fide* intent to use the mark – is authorized by 15 U.S.C. § 1051(b).

7.      The dispute is therefore a simple one: which company has priority over the trademark?

When two companies adopt the same mark, basic rules of trademark priority apply. See, e.g.*,* McKay v. Mad Murphy's, Inc.*,* 899 F. Supp. 872, 881 (D. Conn. 1995). The Second Circuit has outlined the criteria to determine priority:

> Under familiar trademark principles, the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace. The user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially. . . . Adoption and a single use of the mark may be sufficient to entitle the user to register the mark. . . . To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory.

---

[2] Weld-Tech mentions that it used the mark in a foreign jurisdiction before 2003. But Weld-Tech does not argue that this use is relevant in determining priority status in the United States. See Pers.'s Co. v. Christman, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990) ("[F]oreign use has no effect on U.S. commerce and cannot form the basis for a holding that appellant has priority here.").

La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271–72 (2d Cir. 1974). Further, "federal registration of a mark grants nationwide priority as of the filing date of . . . an intent-to-use application." Dudley v. Healthsource Chiropractic, Inc., 883 F. Supp. 2d 377, 389 (W.D.N.Y. 2012) (citing 15 U.S.C. § 1057(c)). Under the Lanham Act, a certificate of registration constitutes "*prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b); see Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 854 (2d Cir. 1988). But registration "does not give priority over" prior users – those "persons who had used and had not abandoned the mark prior to filing." Id. (citing 15 U.S.C. § 1057(c)(1)). Accordingly, if Weld-Tech used the mark without abandoning it before April 30, 2004, it is the senior user. If not, Aquasol is.

The dispute turns on the meaning of "use."

8.   "An unregistered mark is entitled to protection . . . if it would qualify for registration as a trademark." Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 381 (2d Cir. 2005). The common-law "right to a particular mark grows out of its use, not is mere adoption." Jean Patou,, 495 F.2d at 1271. Before April 30, 2004, Weld-Tech argues that it "used" the mark in the United States in marketing and advertising, and that the product bearing the trademark was "available for sale and delivery." (Pl.'s Reply Br., at 2; Docket No. 42)

This activity, however, cannot qualify as "use" for the purposes of trademark protection.

9. First, the extent of the marketing and promotion of the mark is unclear. Weld-Tech asserts only summarily that it "market[ed] and promot[ed] the product to Magnatech, a United States manufacturer and distributor." (Gronmark Decl., ¶ 5.) No further details are provided. On this scant evidence, no reasonable juror could conclude that Weld-Tech used the mark before April 30, 2004.

10. What is more, a mark is only "used" on goods when goods bearing the mark "are sold or transported in commerce." 15 U.S.C. § 1127; Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 381 (2d Cir. 2005); Am. Express Co. v. Goetz, 515 F.3d 156, 161 (2d Cir. 2008) ("[T]here can be no trademark absent goods sold."). Standing alone "mere advertising or promotion of a mark . . . is insufficient to constitute 'use' of the mark 'in commerce.'" Buti v. Perosa, S.R.L., 139 F.3d 98, 105 (2d Cir. 1998); see Gameologist Grp., LLC v. Scientific Games Int'l, Inc., 508 F. App'x 31, 33 (2d Cir. 2013) (summary order) (affirming district court's finding that the prior user could not be considered the senior user since the prior user had only meager sales and engaged in mere promotional efforts). Thus, even if Weld-Tech's bare-bones assertion were accepted, because there is no dispute that Weld-Tech's first sale of an EZ-Purge device in the United States did not occur until December of 2004 – several months after Aquasol had registered the mark – Aquasol's registration of the mark establishes it as the senior user. See 15 U.S.C. § 1057(c).

11. Finally, Weld-Tech does not argue that it is entitled to protection under the "analogous-use" doctrine, and it has not shown, as it must under this doctrine, that its use of the EZ-Purge mark was "open and notorious," or "of such a nature and extent that the mark has become popularized in the public mind." Goetz, 515 F.3d at 161-62

(internal citation and quotation marks omitted). Indeed, in its own statement of facts, it identifies only one U.S. company to which it "promoted" the device .

12. This finding resolves each of Weld-Tech's claims, as it does not argue that it can prevail on any of its claims even if Aquasol is determined to be the senior user. This Court's finding that Aquasol is the senior user, however, does not resolve the entire case because Aquasol has asserted counterclaims against Weld-Tech, and Aquasol has not sought summary judgment with respect to those claims. Accordingly, those claims remain outstanding and the parties remain free, within the confines of the law, to pursue and defend those claims as they see fit.

****

IT HEREBY IS ORDERED, that Weld-Tech's motion for summary judgment and to compel discovery (Docket No. 27) is DENIED

FURTHER, that Aquasol's motion for dismissal of Plaintiff's claims (Docket No. 21) is GRANTED.

FURTHER, that Aquasol's motion to strike (Docket No. 39) is DENIED.


Dated: September 13, 2014
      Buffalo, New York

                                  /s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                       Chief Judge
                                United States District Court