UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WELD-TECH ApS,

                            Plaintiff/Counterdefendant,

     v.                                              **DECISION AND ORDER**
                                                                           13-CV-1048S

AQUASOL CORPORATION,

                            Defendant/Counterplaintiff.

**INTRODUCTION**

The parties in the present action are competitors in the business of the manufacture and sale of welding equipment, and each makes a product called "EZ-Purge," or "EZ Purge" (no hyphen), a device that enables a pipe or fitting to be sealed during welding work. In October 2013, Weld-Tech ApS commenced this action asserting claims that Aquasol Corporation is liable under the Lanham Act and New York General Business Law, as well as under the common-law doctrines of infringement and unfair competition, based on the latter's use of the EZ-Purge name. In its answer, Aquasol asserted similar counterclaims against Weld-Tech, including a claim for injunctive relief related to Weld-Tech's alleged violations of the Lanham Act.

In resolution of the parties' previous summary judgment motions, this Court found that Aquasol's registration of the "EZ Purge" mark with the United States Patent and Trademark Office in its April 30, 2004, application established Aquasol as the senior user,

entitled to nationwide priority. (Docket No. 46); see 15 U.S.C. § 1057(c); Dudley v. Healthsource Chiropractic, Inc., 883 F. Supp. 2d 377, 389 (W.D.N.Y. 2012). This finding resolved each of Weld-Tech's causes of action, therefore summary judgment dismissing the complaint was granted to Aquasol. However, because Aquasol had not at that time moved for summary judgment on its counterclaims against Weld-Tech, those claims remained viable and unresolved. (Docket No. 46 at 6.)

## DISCUSSION

Presently before this Court is Aquasol's motion for partial summary judgment on its first and second counterclaims alleging Weld-Tech's violations of the Lanham Act. "A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248), *cert denied*, 540 U.S. 811 (2003). A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir.

2003).

Aquasol seeks partial summary judgment on liability, as well as injunctive relief, with respect to its counterclaims alleging infringement of a federally registered trademark, in violation of 15 U.S.C. § 1114, and federal unfair competition/false advertising, 15 U.S.C. § 1125(a). Both claims are subject to the same general analysis: first, a court considers whether the plaintiff's mark merits protection, and, second, whether defendant's use of a similar mark is likely to cause consumer confusion.[1] Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 114-15 (2d Cir. 2006).

"A mark is presumed to merit protection when the plaintiff has a valid, registered trademark." Dress for Success Worldwide v. Dress 4 Success, 589 F. Supp. 2d 351, 358 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). Here, as Aquasol notes, this Court has already determined that Aquasol's registration of the "EZ Purge" mark in April 2004 rendered it the senior user. (Docket No. 46 at 5.) Further, Weld-Tech has itself asserted that there is a likelihood of consumer confusion, eliminating any need to consider the Polaroid Corp. factors commonly used to resolve this issue. (Docket Nos. 1 ¶¶ 19-20; 11¶ 17; 30 ¶ 29); see SMJ Group, Inc. v. 417 Lafayette Restaurant LLC, 439 F. Supp. 2d 281, 288 (S.D.N.Y. 2006) (no need to apply Polaroid factors where parties

---

1 As stated in Gruner, a case often cited for "the familiar two-prong test" used in Lanham Act claims, see Louis Vuitton Malletier, 454 F.3d at 115, a "plaintiff in a trademark infringement action must show that defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion. See 15 U.S.C. § 1114(1)(a). Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir 1993) (noting that only two of the four required elements were being challenged before setting forth the test for the remaining elements). Thus, as recognized by the Second Circuit, liability under the Lanham Act may also be challenged on the ground that the mark in question was not "used in commerce." See 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 407-08 (2d Cir. 2005), *cert denied*, 546 U.S. 1033 (2005). Here, despite this Court's prior finding that the relevant mark was not used by Weld-Tech within the meaning of the act *prior* to Aquasol's trademark application filing, Weld-Tech does not dispute that such use occurred after the filing.

agree confusion is likely); see generally Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961), *cert denied*, 368 U.S. 820 (1961).

This Court therefore finds that Aquasol has made a *prima facie* showing of its entitlement to summary judgment with respect to Weld-Tech's liability for the first and second counterclaims. However, the question remains whether Weld-Tech raised a triable issue of material fact with respect to its asserted affirmative defenses.

Initially, Weld-Tech argues that Aquasol's registered trademark must be cancelled because it fraudulently failed to inform the U.S. Patent and Trademark Office in its application that Weld-Tech was already using the "EZ-Purge" trademark. (Docket Nos. 32 at 21-22; 58 at 20-21.) This "unclean hands" argument has already been implicitly rejected by this Court's finding that Weld-Tech did not "use" the trademark within the meaning of the Lanham Act prior to Aquasol's application. (Docket No. 46 at 4.)

Weld-Tech further asserts the related defenses of acquiescence and laches,[2] each of which is based on the consent of the owner to an infringing use of his or her mark. ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical, 314 F.3d 62, 67 (2d Cir. 2002); Total Control Apparel, Inc. v. DMD Int'l Imports, LLC, 409 F. Supp. 2d 403, 409 (S.D.N.Y. 2006). "[A]cquiescence implies active consent, while laches implies a merely passive consent." ProFitness Physical Therapy, 314 F.3d at 67 (internal quotation marks and citation omitted). "The elements of acquiescence are: '(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3)

---

2 Contrary to Aquasol's argument (Docket No. 63), this Court did not expressly or implicitly consider these defenses to Aquasol's claims in the September 2014 decision and order.

4

the delay caused the defendant undue prejudice.' " Id. (quoting Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir. 2002)). The active consent of a trademark holder may be communicated by "conduct that amounts to an explicit or implicit assurance that plaintiff, with knowledge of defendant's conduct, will not assert its trademark rights." ProFitness Physical Therapy, 314 F.3d at 68; Total Control Apparel, 409 F. Supp. 2d at 409. "A plaintiff may be estopped by laches when its unreasonable delay in bringing the action causes prejudice to the defendant." Total Control Apparel, 409 F. Supp. 2d at 409 (citing Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192 (2d Cir. 1996)).

In support of these defenses, Weld-Tech asserts that the parties first met in January 2006 to discuss doing business together. (Gronmark Decl ¶ 14, Docket No. 28; see generally Weld-Tech Counterstatement of Facts, Docket No. 60.) At that time, it was acknowledged that each party had pipe sealing products with identical names, but despite Aquasol's prior trademark application, Aquasol's representative stated only that the similarity was a "coincidence." (Gronmark Decl ¶¶ 12, 14.) Weld-Tech and Aquasol entered into an agreement in October 2006 under which Weld-Tech granted Aquasol the exclusive right to market and distribute Weld-Tech products, including EZ-Purge, in North America. (Gronmark Decl ¶ 17, Ex B; see Aquasol Fact Resp ¶ 6, Docket No. 63 (disputing that the distribution agreement contained a licensing provision with respect to the "EZ-Purge" name).) The business relationship broke down in March 2008, at which time this agreement was terminated. (Gronmark Decl ¶ 20.) Weld-Tech asserts, and Aquasol admits, that while acting as Weld-Tech's marketer and distributor, "Aquasol was

concurrently marketing and seeking to sell its own sealing products under the name 'EZ Purge.' " (Gronmark Decl ¶ 23; Aquasol Fact Resp ¶ 11.)

This Court has no trouble concluding that Aquasol's active distribution of Weld-Tech's EZ Purge products "amount[ed] to an . . . implicit assurance that plaintiff, with knowledge of defendant's conduct, w[ould] not assert its trademark rights." ProFitness Physical Therapy, 314 F.3d at 68; Total Control Apparel, 409 F. Supp. 2d at 409. Further, Aquasol's delay in seeking to enforce its trademark rights until after its distribution of Weld-Tech products is not excusable, but is prejudicial, at minimum, to the extent that Aquasol now seeks monetary damages from the advertising and distribution of Weld-Tech EZ-Purge products during or prior to the existence of the parties' distribution agreement.

In the present motion, however, Aquasol seeks only a finding of liability and injunctive relief. (See Aquasol Mem of Law at 7 (requesting that the Court set a hearing on damages if the parties could not stipulate to an amount).) Given the strong interest in preventing public confusion, "[e]ven where laches and acquiescence would bar damages, . . . a court may nonetheless grant injunctive relief if it determines that the likelihood of confusion is so great that it outweighs the effect of plaintiff's delay in bringing suit." ProFitness Physical Therapy, 314 F.3d at 68.

This Court cannot make such a finding on the current record. Initially, an injunction is an equitable remedy. Accordingly:

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

> that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006); World Wide Plymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160-61 (2d Cir. 2012). The Second Circuit has clearly signaled that this standard should apply beyond the context of eBay's copyright case, and district courts in this Circuit have followed suit. See Salinger v. Colting, 607 F.3d 68, 78 n. 7 (2d Cir. 2010) (noting in dicta that there was "no reason that eBay would not apply with equal force to an injunction in any type of case."); Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC, 875 F. Supp. 2d 211, 226 (W.D.N.Y. 2012); U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 539-40 (S.D.N.Y. 2011), *aff'd* 511 F. App'x 81 (2d Cir. 2013); see also Sola Franchise Corp. v. Solo Salan Studios Inc., No. No. 14-CV-0946(JS)(AKT), 2015 WL 1299259, *16 (E.D.N.Y. Mar. 23, 2015) (considering eBay factors even where defendant defaulted).

Aquasol argues that a permanent injunction should nonetheless issue here because a presumption of irreparable injury and the insufficiency of monetary remedies arises following a showing of a likelihood of confusion. (Aquasol Mem in Opp'n at 3-4.) The Second Circuit has not expressly ruled on this issue. See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 511 F. App'x 81, 85 (2d Cir. 2011) (declining to reach the issue of presumption where a factual finding of irreparable harm was separately made by the district court). The Court of Appeals has recognized, however, that courts "must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable

7

harm (unless such a 'departure from the long tradition of equity practice' was intended by Congress)." Salinger, 607 F.3d at 78 n. 7. No such departure was intended here, inasmuch as the Lanham Act empowers courts to grant injunctions "*according to the principles of equity* and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a) (emphasis added); see Sola Franchise Corp., 2015 WL 1299259 at *16.

The application of a presumption here would run counter to the principles of equity. As noted above, the finding that there is a likelihood of consumer confusion in this case results from the parties' identical allegations on this issue, not from a factual consideration of the so-called Polaroid factors regarding, among other things, the proximity of the products and their competitiveness with one another or evidence of actual consumer confusion. See generally Star Indus., Inc. v. Bacardi & Co., Inc., 412 F.3d 373, 384 (2d Cir. 2005), *cert denied*, 547 U.S. 1019 (2006); see generally Polaroid Corp., 287 F.2d at 495.

Further, the current record contains almost no details that would permit proper consideration of whether injunctive relief is appropriate in this case. Weld-Tech submitted evidence that its only sales in the United States occurred between July 2004 and June 2009, with the bulk of those sales being to *Aquasol* during the course of the parties' distribution agreement. (Douglas Aff ¶ 8 Ex E (Weld-Tech sold only $523.04 worth of goods in the U.S. after the termination of the parties' contractual relationships).) If these sales, and any associated advertising, were the extent of Weld-Tech's infringement, it could easily be concluded that the doctrines of aquiesance and/or laches barred any relief on Aquasol's counterclaims. See World Wide Polymers, 694 F.3d at 161 (where plaintiff

8

failed to pursue injunctive relief for nine years, as a practical matter, an injunction could not provide any useful relief).

The parties do make repeated references to Weld-Tech's "continuous" use of the "EZ-Purge" mark. (See Compl ¶ 15, Docket No. 1; Answer ¶ 86, Docket No. 8; Gronmark Decl ¶ 9.) No evidence, however, is offered by either party regarding the specific advertising or marketing that purportedly constituted infringement subsequent to these specified sales. Instead, the parties essentially concede that such evidence has not been fully explored yet, as each party has asserted that further discovery on this issue is warranted. (See Friedman Decl ¶¶ 5-9, Docket No. 41 (arguing in opposition to Weld-Tech's previous cross-motion for summary judgment that additional discovery was required on, among other things, "the duration, extent, and geographic reach of advertising and publicity of the EZ-Purge mark"); Douglas Aff ¶ 7 (arguing in opposition to Aquasol's present partial summary judgment motion that further discovery is required on, among other things, the extent and geographic reach of the advertising and publicity of Aquasol's EZ Purge mark). Summary judgement is therefore not appropriate at this time.

## CONCLUSION

Although Aquasol established a *prima facie* case of entitlement to summary judgment on the issue of liability, this Court concludes that Weld-Tech raised triable issues of material fact regarding the application of the affirmative defenses of acquiescence and laches to bar, in whole or in part, Aquasol's entitlement to monetary or injunctive relief on the first and second counterclaims. Summary judgment is therefore

denied; however, this denial is without prejudice to the parties filing an appropriate dispositive motion following the completion of further discovery, if pursued.

**ORDERS**

IT HEREBY IS ORDERED that Aquasol's Motion for Partial Summary Judgment (Docket No. 53) is DENIED;

SO ORDERED.

Dated: August 23, 2015
 Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
